UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PATRICK D.,

              Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No. C18-5756 RSM

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Plaintiff contends the ALJ erred by rejecting his testimony, his mother's testimony, and several medical opinions. Dkt. 9. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 47 years old, has at least a high school education, and has worked as a truck driver and hostler. Dkt. 7, Admin. Record (AR) 28. Plaintiff applied for benefits in September 2015, alleging disability as of December 2, 2014. AR 92. Plaintiff's application was denied initially and on reconsideration. AR 91, 103. After the ALJ conducted a hearing in April 2017, the ALJ issued a decision finding Plaintiff not disabled. AR 39, 17-30.

# THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the December 2014 alleged onset date.

**Step two:** Plaintiff has the following severe impairments: major depressive disorder, attention deficit disorder (ADD), diabetic neuropathy, obesity, and lumbar spine degenerative disc disease.

**Step three:** Plaintiff's impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform sedentary work. He can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, crawl, balance, and climb ramps and stairs. He can occasionally operate foot controls, bilaterally. He can have occasional exposure to vibration and extreme cold. He can understand, remember, and apply detailed, but not complex, instructions.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, he is not disabled.

AR 19-30. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1.

# DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954, 957 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**A.    Plaintiff's Testimony**

Plaintiff testified he could stand or walk for three hours per day total. AR 67-68. He can sit for up to an hour and a half before needing to stretch for ten minutes, then could sit for less than an hour before stretching, and the amount he could sit at one time would continue to decrease. AR 73-74. He needs to lie down for an hour during the day. AR 76. He does not feel he could show up to a job 40 hours a week long-term. AR 89. Plaintiff said that medication improves his ADD and mood swings, but he still has mood swings. AR 63. When he gets depressed, he becomes lethargic. AR 63-64. He does not feel like doing anything "daily," but he forces himself. AR 64.

The ALJ discounted Plaintiff's testimony because of inconsistent statements, inconsistency with his activities, and effective treatment or conservative treatment.[3] AR 25-26.

---

[3] The ALJ also cited Plaintiff's receipt of unemployment benefits, but the Commissioner does not rely on this reason. *See* Dkt. 10 at 4-8.

### 1. Inconsistent Statements

Inconsistent statements can be a clear and convincing reason to discount a claimant's testimony. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007). At the hearing, Plaintiff testified that he successfully completed two quarters of classroom instruction on sterile processing, from September 2015 through March 2016. AR 56. He sat through classes four hours per day, with ten to fifteen-minute breaks every hour and a half, three or four days per week. AR 77. Plaintiff's attorney asked him if he would have been able to handle this activity "five days a week, eight hours a day where you had to sit in class." AR 77. Plaintiff responded, "Yeah. With the breaks we got, I'd say yeah." *Id*. Plaintiff's counsel reminded Plaintiff of his prior testimony that he could "only sit for an hour and a half the first time, but then it would decrease as the day goes on…." AR 78. Counsel then repeated the question, asking if Plaintiff "had to go in five days a week, eight hours a day, would that, in fact, be enough break time, if you were only allowed to take a break every hour and a half?" AR 78. This time Plaintiff responded, "For my own comfort level, no, it wouldn't." AR 78.

After the hearing, Plaintiff submitted a letter stating that he "misunderstood, or misinterpreted," the question. AR 278. He said that his response ("Yes, with discomfort") was incorrect, because he thought the question referred to his actual time in the classroom for four hours per day. *Id*. Plaintiff stated that the correct answer would have been "No, I would not be able to sit in [a] classroom for 40 hours per week…." *Id*.

The ALJ found that the letter was "an attempt to change what was honest testimony" because the question asked at the hearing was "very clear." AR 26. The ALJ's interpretation of the evidence is rational and supported by substantial evidence. The question during the hearing was clearly worded as a hypothetical. AR 77 ("Let's say that it had been five days a week, eight

hours a day"). Plaintiff's response, that he "[woul]d say yeah," indicates he understood it was a hypothetical. AR 77. Plaintiff then changed his testimony in response to his attorney's pointed reminder. AR 78.

Plaintiff's statement at the hearing that he could handle 40 hours a week of sitting was inconsistent with his letter that he could not. The ALJ reasonably found that the inconsistency was not based on a misunderstanding. Inconsistent statements were a clear and convincing reason to discount Plaintiff's testimony. *See Orn*, 495 F.3d at 636.

### 2. Effective Treatment/Lack of Treatment

The ALJ discounted Plaintiff's testimony because his neuropathy, diabetes, back pain, and mental impairments improved with medication and because he did not seek further treatment for his back or mental health. AR 25-26. An ALJ may properly discount claimant testimony when the record shows the claimant "responded favorably to conservative treatment." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008). Failure to seek aggressive treatment can also be a sufficient reason to discount claimant testimony. *Id.*

#### a) Mental Health

Plaintiff was advised to get mental health therapy but did not because his insurance would not cover all costs. AR 60-61. Plaintiff agreed that he "didn't prioritize" getting therapy. AR 60-61. Plaintiff argues that the ALJ failed to account for his testimony that "he could not afford more treatment." Dkt. 9 at 11. An "unexplained or inadequately explained failure" to seek treatment or follow prescribed treatment can be a valid reason to discount a claimant's testimony, but an ALJ must consider a claimant's proffered reasons. *Trevizo*, 871 F.3d at 679-80. Plaintiff did not testify that he could not afford therapy. Plaintiff testified that he did not follow the recommendation for therapy because "initially there was going to be some out of

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 5

pocket" costs. AR 61. His primary care doctor put him on medication and his ADD and mood issues "improved." AR 63. The ALJ considered Plaintiff's proffered reasons, noting that Plaintiff was insured and, though Plaintiff testified it offered poor coverage, Plaintiff had "not sought treatment at low cost clinics or … better insurance through the Affordable Care Act." AR 26. Plaintiff testified he had looked into Affordable Care Act insurance but chose to stay on his wife's insurance even though it was limited. AR 70-71.

As the law requires, the ALJ considered Plaintiff's proffered reasons. While other interpretations of the evidence are possible, the ALJ's interpretation that Plaintiff's failure to follow treatment recommendations for therapy indicates he did not find his impairments disabling is a rational interpretation, supported by substantial evidence, and thus must be upheld. *See Burch*, 400 F.3d at 680-81.

### b) Back

Plaintiff testified that he cannot sit for long because his "lower back tightens up" and his "glutes go numb." AR 68. However, his treating doctor, Thomas R. Cooke, D.O., noted in June 2016 that Plaintiff's back was "much better since using Medrol dosepak. [He h]as mild pain but not severe." AR 410. Moreover, when Plaintiff established care with a new doctor in January 2017, treatment notes show that he raised no major concerns about back pain. AR 434-38. Plaintiff's main concern was diabetes, and he also brought up neuropathy and a history of gout. AR 434. Although "herniated disks" were noted in the review of systems, the list of diagnoses and the treatment plan included nothing related to back pain. AR 436-37.

"[A]n unexplained, or inadequately explained, failure to seek treatment" can constitute a sufficient reason for discrediting a claimant's symptom testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ reasonably concluded that the fact that Plaintiff did not report

significant back concerns to his doctor undermined his testimony that his back pain was disabling. This was a clear and convincing reason to discount Plaintiff's testimony.

### c) Diabetes/Neuropathy

In April 2015 Plaintiff told Dr. Cooke that he was "doing much better" with his diabetes. AR 345. In October 2015 and September 2016, Plaintiff told Dr. Cooke that "Lyrica helped significantly" with his diabetic neuropathy and he "[o]verall is doing fairly well" with regard to his diabetes. AR 408, AR 340. However, "'doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.'" *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)). While Plaintiff's diabetic and neuropathic symptoms clearly improved, the record is unclear as to whether they improved to the point that he could work or that contradicted his testimony.

Although this was an erroneous reason to discount Plaintiff's testimony, the ALJ provided sufficient other clear and convincing reasons that the error is harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008).

### 3. Activities

An ALJ may discount a claimant's testimony based on daily activities that contradict his testimony or that meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639.

#### a) Physical

The ALJ discounted Plaintiff's testimony because he did dishes, attended his son's baseball games, performed his personal care needs, and went shopping, and these "activities require walking, standing, and lifting at a level consistent with sedentary work." AR 26. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 7

carrying article like docket files, ledgers, and small tools. … Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Occasionally is defined as up to one-third of the workday, or less than three hours per day. SSR 83-10. Plaintiff testified that he could stand or walk for three hours per day, consistent with sedentary work. AR 67-68. However, none of the cited activities require lifting 10 pounds at a time or sitting for five hours. The activities neither contradict Plaintiff's testimony nor show that he can work. The ALJ erred by discounting Plaintiff's testimony based on these activities.

### b) Mental

From Plaintiff's successful completion of six months of classes in sterile processing, the ALJ inferred that he "was able to focus, persist, concentrate, and complete tasks." AR 26. Plaintiff argues that this was an unsuccessful work attempt that does not prove Plaintiff could work. Dkt. 9 at 11. But the ALJ did not rely on this evidence alone to prove Plaintiff could work. The ALJ's inference that Plaintiff showed the mental capacity to work was reasonable and must be upheld. *See Burch*, 400 F.3d at 680-81.

The Court concludes the ALJ provided several clear and convincing reasons for, and thus did not err by, discounting Plaintiff's testimony.

## B. Medical Opinions

A treating physician's opinion is generally entitled to greater weight than an examining physician's opinion, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Garrison*, 759 F.3d at 1012. An ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if a treating or examining

doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

### 1. Dr. Cooke

In a June 2016 treatment note, Dr. Cooke considered "what [Plaintiff] is going to be able to do physically between the back, neuropathy, [and] his diabetes" and wrote that it was "going to take at least a couple years for the back to have any chance of healing and be able to do anything more particularly with two distinct herniations as well as poor control of diabetes and increasing neuropathy as well as retinopathy. Because of that he really cannot do much in regard to gainful employment." AR 410. The ALJ rejected this opinion as inconsistent with the record, vague and lacking specific functional limitations, and contradicted by the conservative and minimal treatment Plaintiff sought. AR 27.

#### a) Inconsistent with the Record

Dr. Cooke's opinion that Plaintiff was completely disabled based on his back impairments and diabetic neuropathy was contradicted by his own findings. He found that Plaintiff's back "[i]s much better since using Medrol dosepak… [He h]as mild pain but not severe" and that "Lyrica helped significantly" with diabetic neuropathy. AR 410, 408. These significant improvements are inconsistent with the opinion of total disability. Incongruity

between a treating physician's opinions and her own medical records is a "specific and legitimate reason for rejecting" the opinions. *Tommasetti*, 533 F.3d at 1041. The ALJ did not err by rejecting Dr. Cooke's opinion of total disability.

### b) Vague

An ALJ may properly discount a treating doctor's opinion of disability when, although the doctor "identified characteristics that might limit [the claimant's] ability to work on a sustained basis, [the doctor] did not explain *how* these characteristics precluded work activity in [the claimant's] case." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Dr. Cooke cited back, neuropathy, and diabetes concerns but did not identify any resulting standing, walking, sitting, lifting, or other restrictions. AR 410. Plaintiff asserts that vagueness and lack of specific functional limitations "does not justify rejecting his overall opinion," but his overall opinions contained nothing beyond the conclusory opinion of total disability that the ALJ properly rejected. Dkt. 9 at 5.

The ALJ did not err by rejecting Dr. Cooke's opinion on the grounds of vagueness and a lack of specific functional limitations.

### c) Minimal, Conservative Treatment

Plaintiff argues that the ALJ failed to account for his "inability to afford more treatment." Dkt. 9 at 5. Plaintiff testified that he did not seek mental health treatment because there would be initial out of pocket expenses but did not say he could not afford it. AR 61. Plaintiff told his doctor in October 2015 that he had "difficulty paying" for Lyrica, but the record indicates he continued to use it through at least January 2017. AR 340, AR 438, AR 408. The ALJ reasonably concluded that the lack of treatment was attributable to lack of severity rather than lack of funds. Minimal, conservative treatment was a specific and legitimate reason to discount

Dr. Cooke's opinions.

The Court concludes the ALJ did not err by discounting Dr. Cooke's opinions.

### 2. Robert E. Schneider, Ph.D.

On a referral from the state Division of Vocational Rehabilitation, in February 2015 Dr. Schneider assessed Plaintiff's "ability to benefit from training and adapt to competitive employment." AR 310. Dr. Schneider's "impressions" were that Plaintiff's primary strength was working with numbers and he was "capable of acquiring new skills with numbers"; he was "not a very critical [or] quick thinker"; he required treatment for "ADD [and] depression and anxiety with diminished psychological energy"; and "[h]is independent problem solving is not very good and he is slow." AR 318-19. Dr. Schneider concluded that "careers in the accounting tech field are recommended." AR 319.

The ALJ noted that Dr. Schneider's opinions were formulated "in the context of vocational rehabilitation [to find] a suitable job for the claimant" rather than to determine whether he can perform any full-time work at all and should be viewed in that light. AR 27. The ALJ gave Dr. Schneider's opinions "[l]ittle weight" because they did not contain "specific functional limitations that can be in a residual functional capacity." AR 27. Plaintiff argues that this is not a legitimate reason to reject Dr. Schneider's "opinion" that Plaintiff's ADD affects his cognitive functioning and memory and that Plaintiff requires psychiatric treatment. Dkt. 9 at 6. However, an ALJ does not err by basing the RFC on "the only concrete limitations" available in the medical opinions. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). Undefined effects on cognitive function and memory, and recommendations for treatment, are not concrete limitations that can be incorporated into an RFC. "An ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations." *Rounds*

*v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The Court concludes the ALJ did not err in his treatment of Dr. Schneider's report.

### 3. Alexander Patterson, Psy.D.

Dr. Patterson examined Plaintiff in November 2015 and opined that his ability to function at work was overall "moderately impaired" due to difficulty with attendance, timeliness, task completion, establishing and maintaining relationships, and managing stress. AR 337. The ALJ gave these opinions only "[s]ome weight" because they appeared to be based primarily on Plaintiff's self-reports rather than clinical findings. AR 27.

An ALJ may discount medical opinions based largely on self-reports and not on clinical evidence. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). However, because psychiatric evaluations "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient…, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Clinical interviews and mental status evaluations "are objective measures and cannot be discounted as a 'self-report.'" *Id.*

Dr. Patterson conducted a clinical interview and mental status examination. AR 333-36. However, the ALJ reasonably concluded that Dr. Patterson's opinions were based primarily on Plaintiff's subjective reports, because Dr. Patterson's own objective findings contradict many of his opinions and thus could not support the opinions. In contrast to Dr. Patterson's opinions that "poor focus and concentration" would cause difficulty completing tasks, Dr. Patterson's findings were that Plaintiff successfully completed concentration tasks and had normal memory. AR 337, AR 335. Plaintiff had normal attitude and general behavior, thought content, stream of mental activity, orientation, memory, fund of knowledge, concentration, abstract thinking, and insight

and judgment. AR 335-36. The only abnormalities were dysphoric mood and tearful affect, and partially abnormal general appearance based on clothing that was disheveled and too light for the weather, although he had normal hygiene and grooming and no psychomotor agitation or retardation. AR 335. The almost entirely normal objective findings cannot support the extensive limitations Dr. Patterson opined.

The Court concludes the ALJ did not err by discounting Dr. Patterson's opinions.

### 4. State Agency Non-Examining Doctors Patricia Kraft, Ph.D., and Steven Haney, M.D.

Dr. Kraft reviewed Plaintiff's records in December 2015 and opined that Plaintiff could maintain concentration, persistence, and pace in simple routine tasks for the two-hour periods required for competitive employment. AR 99. He could handle "[s]low paced changes in the workplace." AR 100. He should not work directly with the public and "would feel more comfortable working in an independent position with fewer coworkers." AR 100. In March 2016, Dr. Haney reviewed Plaintiff's records and concurred in Dr. Kraft's opinions. AR 113-14. The ALJ gave these opinions "[l]ittle weight" because Plaintiff did not pursue further mental health treatment, the limitations were inconsistent with Plaintiff's activities, and Plaintiff's mental health symptoms were situational, based on his physical issues. AR 28. Plaintiff challenges only the first reason, arguing that he could not afford additional treatment. Dkt. 9 at 9. However, he only testified that he did not pursue counseling because there would be initial out-of-pocket expenses. AR 61. Moreover, the other two reasons were sufficiently specific to discount the doctors' opinions. As the ALJ noted, Plaintiff is able to attend sporting events and go shopping, indicating he is not precluded from all public contact. *See* AR 220, 222. He reported he "can't walk very well at sporting events," but reported no problems being around

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 13

people. AR 222. He mentioned no problems being around his classmates when successfully completing the classroom portion of his sterile processing training. AR 238. And Plaintiff himself testified that his mental health symptoms would subside if his physical impairments improved. AR 86.

The Court concludes the ALJ did not err by discounting the non-examining doctors' opinions.

### 5. Other Medical Findings

Plaintiff describes various medical record excerpts, claiming they support his testimony. *See* Dkt. 9 at 9. This recitation is of no use to the Court, because it is not the Court's role to reevaluate the evidence. *See Thomas*, 278 F.3d at 957 (affirming where the "ALJ's interpretation of the conflicting medical evidence is supported by substantial evidence"). "It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Plaintiff's recitation of medical evidence sheds no light on whether the ALJ's decision is supported by substantial evidence and free of legal error, and the Court will not address it further.

## C. Lay Witness Statement

In an October 2015 Function Report, Plaintiff's mother stated that Plaintiff can walk through a large grocery store, but it is painful. AR 214. He does not like the pressure of appointments and other places he "has to be." AR 213. He does not pay attention to multiple things well, and panics when faced with new tasks. AR 215. An ALJ may discount lay witness testimony by giving a germane reason. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). The ALJ gave "some weight" to Plaintiff's mother's statements but discounted them as

inconsistent with the overall medical evidence, including Dr. Leinenbach's and Dr. Patterson's examination findings. AR 27.

Dr. Patterson found that Plaintiff performed well on concentration and memory tests and had good abstract thinking and insight and judgment. AR 335-36. He had normal thought content and mental activity and was able to perform a three-step command "without difficulty." AR 336, 335. These findings contradicted Plaintiff's mother's statements that Plaintiff had poor attention and concentration and were a germane reason to discount her statements.

Her testimony that Plaintiff has difficulty even walking through a grocery store was contradicted by Dr. Leinenbach's findings that Plaintiff had normal regular, tandem, heel, and toe gait and normal lower extremity strength. AR 330. Plaintiff argues that the ALJ cannot rely on Dr. Leinenbach's findings because he rejected Dr. Leinenbach's opinions. Dkt. 11 at 9. The ALJ rejected Dr. Leinenbach's opinions on the grounds that "more recent records" showed Plaintiff's condition worsened. AR 27. But his November 2015 findings were made just a month after Plaintiff's mother's October 2015 statement and thus the ALJ could reasonably infer that they served as a valid comparison. *See* AR 329, 209.

The Court concludes the ALJ did not err by discounting Plaintiff's mother's statement.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED,** and this case is **DISMISSED** with prejudice.

DATED this 18 day of June 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE